[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision on Motion for Extension and Motion to Revoke Commitment
Ryan S. is fourteen years of age. He will be fifteen on July 1, 2000. He has been in the custody of the Department of Children and Families (DCF) since October 20, 1997. He seeks to be reunited with his father, Daniel S. who moves to revoke Ryan's commitment to DCF. The goal of DCF had been to reunify after certain steps had been accomplished, as outlined in an ill-advised plan by DCF of August 17, 1999 to move to unsupervised and overnight visits after Ryan received sexual abuse awareness training but without requiring father to receive any sexual offender treatment. However, in State's Exhibit E,Study in Support of Permanency Plan dated October 29, 1999 the recommendation seeks a finding by the Court that further efforts to reunify with Daniel S. are no longer appropriate.
Daniel S. has been convicted of child molestation three times, for events which occurred in 1974 involving one boy age 13; 1975 involving two boys age 13 or 14; and 1984 involving one boy age 8. All of his victims were known to him, one being his sister's son. He spent considerable time incarcerated for these offenses but received no sexual offender treatment. On November 13, 1997, DCF recommended that Daniel S. attend and participate in sexual offender treatment. This was not done at that time. In the meantime, unsupervised visits were changed to supervised visits when a daughter of Daniel revealed to a physician that he had CT Page 3271 touched her inappropriately sometime prior to February, 1996. Even then no sexual offender treatment was ever started. Finally, four to six months ago, treatment was started. That treatment is being conducted on a "several times a month" basis by William R. Conti, MA. who was contracted privately by Daniel S.
As part of the attempt to effect reunification of Ryan with father, Marjorie Roccoberton, MA was engaged by DCF to offer Ryan four sessions of sexual abuse awareness for the purpose of education and assessment, and for recommendations regarding his progress and needs in therapy. Part of this process included Ms. Roccoberton meeting with Daniel and speaking by telephone with Mr. Conti. Since no written report by Mr. Conti was introduced, and only two "correcting" letters discussed below were offered, the remarks attributed to Mr. Conti by Ms. Roccoberton, subject to the "correcting" letters, are significant since they are the only current assessment of Daniel S. It is noted that Ms. Roccoberton's role was not to assess Mr. S. and that her encounters with him were limited. The following appears on page 8 of State's Exhibit A:
 "In a conversation with Mr. Contay (sic.), Mr. S.'s therapist, he reported that Mr. S was self-referred for individual therapy to address his sexual offense behavior. He noted that Mr. S.'s therapy is offense-specific, and that he has been in treatment for four to six months. Reportedly, this is the only time since being released from prison in 1989 that Mr. S has been involved in long term, offense-specific treatment. When I asked Mr. Contay what Mr. S.'s diagnosis was, he stated that Mr. S. does not identify himself as a pedophile, and that he does not present that way currently. However, Mr. Contay would not rule out a diagnosis of pedophilia based on Mr. S's history. He further stated that Mr. S. acknowledged offending on two occasions in the 1970's. When asked whether Mr. S. assumes responsibility for his offenses, Mr. Contay replied that, "He does to the extent that he can'. He also said that Mr. S. is not as remorseful as Mr. Contay would like him to be. He said that Mr. S. does not see his victims as being particularly injured by his abuse, and he has a limited understanding of the long-term impact of sexual abuse. Mr. Contay was asked his opinion of Mr. S.'s risk level for reoffense at this time. He replied that he believes Mr. S. is at moderate risk for reoffending with children in general, but that he may be at lower risk with his own children because, "Some sex offenders still have some sense of the incest taboo.' However, he further CT Page 3272 stated that if Mr. is currently at risk, "It is with kids he knows and has a relationship with.'"
Mr. Conti, in Respondent's Exhibit 1, affirms all but the risk diagnosis:
 "Mr. S has requested that I address a remark attributed to me by Marjorie Roccoberton, MA, LPC in her recent evaluation of Ryan S. Essentially, her characterization of my opinions are correct. However, I did not intend to convey a belief that Mr. S. is a "moderate' risk to reoffend. Rather, my position is that I can not and will not offer such assessment. As I have repeatedly stated, my role is to provide Mr. S with sex offender specific counseling. I am leaving it to court appointed clinicians/evaluators to make pronouncements on level of risk and/or issues of custody/visitation."
It is most unfortunate that Mr. Conti, the only professional person with extensive current knowledge of Mr. S. probable expertise to assess the risk element and the ability to enlighten the Court as to the appropriateness of unsupervised and extended visitation with Ryan would take the position that such assessment should be left to those with less contact and familiarity regarding Mr. S. However, his affirmed oral report to Ms. Roccoberton is of value and raises concerns which need to be resolved, preferably by a clinician with expertise in this field who has had previous experience with this family.
Ryan is rapidly approaching the age of fifteen. Clearly he will return to his father as soon as he can legally do so. This Court owes it to Ryan and his father to ensure that all preparations have been made for that event, including an assessment of current status done by someone commissioned to accomplish that purpose. The charge that Mr. S. may be pursuing reunification more to serve his own needs than to act in Ryan's best interest must also be examined. DCF is ordered to have an evaluation of father individually and Ryan individually accomplished within sixty days to assess risk and appropriateness of reunification.
The Motion to Revoke is denied without prejudice to reargue only after such a current evaluation is accomplished. In the meantime, the Court must find that the cause for commitment continues to exist, that commitment is in the best interest of Ryan, and the Motion for Extension of Commitment is granted for a period not to exceed twelve months with a waiver of the six month prohibition CT Page 3273 against revisiting this issue. While the law requires the Court to act in furtherance of the need for permanency in the child's life, in this case that need is not accomplished by leaving the status quo, and in this case the mere passage of time is not a good measure upon which to invoke the consequence of that rule. Therefore, the Court enters a finding that further efforts to reunify with father are appropriate. Father, Ryan, GAL or DCF may file a motion to revisit the issue of unsupervised visitation, extended visitation and ultimately reunification at any time after the above referred to evaluation is accomplished and the report received by the Court.
Mack, J.